COMMONWEALTH *vs.* GEORGE C. HERSEY.

In an indictment for murder by poison, it is not necessary to allege in the indictment that the poison was administered by the defendant to the deceased with an intent to kill.

The court will not order an officer, having charge of witnesses who have been excluded from the court room until they should severally be called to testify, to prohibit them from reading the newspaper accounts of the evidence in the case.

In the trial of an indictment for murder by poison, in which one count alleges that the deceased was pregnant, and was induced to take the poison by assurances of the defendant that it was a medicinal preparation which would produce a miscarriage, evidence of a conversation two or three years before the time of the acts charged, in which the defendant applied to a witness for information upon the subject of procuring abortions, is inadmissible.

If a medical witness on cross-examination has identified certain medical advertisements as his, they may be read to the jury as a portion of the cross-examination, for the purpose of affecting his credit, but the newspaper in which they are contained cannot be laid before the jury.

Evidence that the defendant in an indictment refused to fly, when advised to do so, after suspicions against him were excited, is inadmissible in defence.

INDICTMENT for murder.

The first count charged that George C. Hersey, " on the third day of May in the year of our Lord eighteen hundred and sixty, at Weymouth in the county of Norfolk, in and upon one Betsey Frances Tirrell, in the peace of the said commonwealth then and there being, wilfully, feloniously and of his malice aforethought, did make an assault, and to her the said Betsey Frances Tirrell did feloniously, wilfully and of his malice aforethought, then and there give and administer a certain large quantity, to wit, ten grains in weight, of a certain deadly poison called strychnine, he, the said George C. Hersey, then and there well knowing the same to be a deadly poison, with intent that the said Betsey Frances

15 *

Tirrell should then and there take and swallow down the same into her body, and that the said Betsey Frances Tirrell, the said strychnine, so given and administered as aforesaid, did then and there take and swallow into her body, and by reason thereof became then and there mortally sick and distempered in her body, and of said mortal sickness and distemper did then and there languish, and languishing for the space of one half hour did there live, and afterwards, on the day and year aforesaid, did there die of the mortal sickness and distemper then and there caused by the poison aforesaid, so as aforesaid, by the said George C. Hersey, then and there feloniously, wilfully and of his malice aforethought given and administered to her the said Betsey Frances Tirrell ; and so the jurors aforesaid, on their oath aforesaid, do say and present, that the said George C. Hersey, her the said Betsey Frances Tirrell, in manner and form aforesaid, and by the means aforesaid, at Weymouth in the county aforesaid, feloniously, wilfully and of his malice aforethought, did kill, poison and murder, against the peace " &c.

The second count charged that the defendant, on the same day, and at the same place, with force and arms, " a certain quantity to wit, ten grains of strychnine, the same being then and there a deadly poison, feloniously, wilfully and of his malice aforethought, did put, mix and mingle in and together with certain preserved fruit, the name of which is to the jurors aforesaid unknown, the said George C. Hersey then and there well knowing the said strychnine to be a deadly poison ; and that the said George C. Hersey, the said strychnine, so as aforesaid put, mixed and mingled in and together with said preserved fruit, into a certain spoon did then and there put and place, and the said spoon, with the said strychnine put, mixed and mingled in and together with said preserved fruit so as aforesaid then and there contained therein, then and there to wit, on said third day of May in the year aforesaid, with force and arms at said Wey-mouth, in the county aforesaid, feloniously, wilfully and of his malice aforethought into the hands of said Betsey Frances Tirrell did then and there put and place, he the said George C. Hersey then and there falsely, wilfully, feloniously and of his

malice aforethought pretending to the said Betsey Frances Tir
rell that the said strychnine so as aforesaid put, mixed and min-
gled in the spoon aforesaid with the preserved fruit aforesaid,
was a medicinal preparation which would produce the miscar-
riage of said Betsey Frances Tirrell, she the said Betsey Frances
Tirrell being then and there pregnant with child, and the said
George C. Hersey then and there well knowing the same not to
be such medicinal preparation, and then and there well knowing
that the same was then and there a deadly poison, and the said
George C. Hersey then and there feloniously, wilfully and of
his malice aforethought intending that said Betsey Frances Tir-
rell should then and there and thereafterwards take and swallow
down into her body the said strychnine, put, mixed and mingled
in and together with the preserved fruit as aforesaid, in the spoon
aforesaid, in the belief then and there that the said poison was
then and there a medicinal preparation so as aforesaid intended
and adapted to produce the miscarriage of her the said Betsey
Frances Tirrell. And the jurors aforesaid upon their oath afore-
said do further present, that the said Betsey Frances Tirrell, not
knowing the said strychnine, so as aforesaid put, mixed and
mingled with the preserved fruit aforesaid, in the spoon afore-
said so by the said George C. Hersey into the hands of said Bet-
sey Frances Tirrell then and there put and placed, to be then and
there a deadly poison, but believing the same to be a medicinal
preparation, as aforesaid, afterwards, to wit, on the aforesaid third
day of May in the year aforesaid, at Weymouth aforesaid in the
county aforesaid, the said strychnine so as aforesaid, with said
preserved fruit, in the spoon aforesaid, then and there put, mixed
and mingled as aforesaid, did then and there take and swallow
down into her body : by means of which said taking and swal-
lowing down into the body of said Betsey Frances Tirrell so as
aforesaid of the said strychnine, with said preserved fruit in the
spoon aforesaid put, mixed and mingled by the said George C.
Hersey as aforesaid, the said Betsey Frances Tirrell became then
and there sick and distempered in her body, of which said sick-
ness and distemper of body, so, by the said taking and swal-
lowing down into her said body of the poison aforesaid, so, as

aforesaid, put, mixed and mingled, caused and produced as afore-
said, the said Betsey Frances Tirrell did then and there languish,
and languishing for the space of one half hour did there live,
at the end of which time the said Betsey Frances Tirrell; on the
day and year aforesaid, at Weymouth aforesaid, in the county
aforesaid, of the poison aforesaid so by the said George C. Her-
sey wilfully, feloniously and of his malice aforethought into the
hands of said Betsey Frances Tirrell put and placed, and by
said Betsey Frances Tirrell then and there into her said body
taken and swallowed down as aforesaid, under the false repre-
sentations of the said George C. Hersey aforesaid, did die.
And so the jurors aforesaid on their oath aforesaid, do say and
present, that the said George C. Hersey, her the said Betsey
Frances Tirrell, on the day and year aforesaid, at Weymouth
aforesaid in the county aforesaid, in manner and form aforesaid,
wilfully, feloniously, and of his malice aforethought, did poison,
kill and murder, against the peace" &c.

The third count charged that Betsey Frances Tirrell commit-
ted suicide, and that Hersey incited her thereto.

The fourth count charged Hersey with the murder of Betsey
Frances Tirrell in some way and manner and by some means
and agencies to the jurors not known.

At the trial in this court, before *Bigelow,* C. J., and *Dewey, Mer-
rick,* and *Chapman,* JJ., upon the motion of the prisoner, the wit-
nesses for the Commonwealth, with the exception of those sum-
moned merely as experts, were excluded from the court room, un-
til they should severally be called to testify. The prisoner then
moved that the officer having charge of the witnesses so ex-
cluded, should be directed to prohibit them from reading the
newspaper accounts of the evidence in the case; but this the
court declined to do.

Frederick Morrill was called as a witness for the Common
wealth, and asked as to a conversation with the prisoner in
which the latter applied to him for information upon the sub-
ject of procuring abortions two or three years before the time
of the acts charged in the indictment, and not with reference
to these particular acts; and, on objection, the evidence was

excluded, as too remote to have any bearing on the issue to be tried.

The same witness, on cross-examination, identified certain medical advertisements in the Boston Herald as his; and copies of the newspapers containing the same were offered to the jury, for the purpose of showing the nature of his medical practice, and affecting his credit before the jury. Objection being made, the court held that the advertisements might be read to the jury as a portion of the cross-examination of the witness, and for the purpose of affecting his credit, but that the newspapers themselves could not be laid before the jury.

Evidence was offered in defence, that the prisoner's brother advised him to fly, after the death of Betsey Frances Tirrell, and suspicions against him were excited, and that he refused to do so; but the evidence was excluded.

The counsel for the prisoner contended that no conviction could be had on the first two counts in the indictment, because neither of them contained any averment that the prisoner administered the poison with an intent to kill, and asked the court so to instruct the jury; but *Bigelow*, C. J., in charging the jury, instructed them that it was not necessary to the validity of the first two counts that they should contain an allegation that the prisoner in administering the poison intended to take the life of the deceased; that the law presumes that every man intends the natural and necessary consequences of his own acts; that if a person commits an act in its nature malicious and felonious, the inference of an evil and wicked intent is supplied by proof of the commission of the act. If therefore the jury were satisfied that the prisoner administered to the deceased a quantity of strychnine, knowing it to be a deadly poison, and that the deceased died in consequence of taking the poison thus administered by the prisoner, it would be competent for them to infer that the poison was given with an intent to take the life of the deceased, and to find him guilty on the first two counts in the indictment.

After a verdict of guilty of murder in the first degree on the first two counts, and not guilty on the residue, the prisoner moved in arrest of judgment, because it was not averred in

either of the first two counts that the poison was administered with an intent to kill.

*G. S. Sullivan,* (*E. C. Baker* with him,) for the prisoner. Intent is the essence of this crime. Poison is often administered by physicians and others with an intention of saving and not of destroying life. The intent should therefore be stated; and so are the precedents. Archb. Crim. Pl. (5th Amer. ed.) 49, 432. Wharton's Precedents, (2d ed.) 125–138. 2 Cox C. C. Appendix, III. Davis's Precedents, 182, 183, 185, 186. There is no averment that the defendant administered a mortal dose of poison, or that he knew the quantity administered to be a mortal dose. The averments only refer to the quality of the substance, and not to the quantity.

*Foster,* A. G., for the Commonwealth, cited Train & Heard's Precedents, 325; 2 Stark. Crim. Pl. 18; 1 East P. C. *c.* 5, §§ 17, 116; *Regina* v. *Waters,* 3 Cox C. C. 300; *Regina* v. *Alison,* 8 C. & P. 418; *Commonwealth* v. *Heath,* 11 Gray, ; 1 Hale P. C. 430, 455; 3 Inst. 50; *Commonwealth* v. *Parker,* 9 Met. 264; Archb. Crim. Pl. (5th Amer. ed.) 49, 104, 438, 439; *The People* v. *White,* 22 Wend. 167; S. C. 24 Wend. 520; *Regina* v. *Ryan,* 2 M. & Rob. 213; *Commonwealth* v. *Webster,* 5 Cush. 306; *The King* v. *Dixon,* 3 M. & S. 14.

BIGELOW, C. J. The motion in arrest of judgment in the present case is founded on the omission to aver that the defendant, in administering poison to the deceased, did it with an intent to kill and murder. No direct authority or adjudication has been cited by the counsel for the prisoner in support of the position that such an averment is necessary or essential to the validity of the indictment. They do, however, rely on forms or precedents, which are found in text books of approved authority and in reported cases, in which the allegation that the poison was administered with intent to kill is distinctly set forth. Wharton's Precedents, (2d ed.) 125–138. Archb. Crim. Pl. (5th Amer. ed.) 432. 2 Cox, C. C. Appendix, III. Davis's Precedents, 182–186. But, on the other hand, it is certainly true that there are precedents entitled to equal respect with those cited by the prisoner's counsel, in which no such averment is made, as a

separate and substantive allegation essential to the description of the crime, and distinct from the general prefatory clause, in which a general intent to kill is stated without any averment of time and place. 2 Stark. Crim. Pl. 12, 15, 18. 1 East P. C. *c.* 5, § 116. 3 Chit. Crim. Law, 773, 779. *The King* v. *Clark,* 1 Brod. & Bing. 473. *Regina* v. *Alison,* 8 C. & P. 418. So far therefore as the question now raised depends on authority, it may fairly be said to be an open one. It would be giving too much force to mere precedents of forms, which often contain unnecessary and superfluous averments, to hold that a particular allegation is essential to the validity of an indictment, because it has sometimes, or even generally, been adopted by text writers or by cautious pleaders.

We are then to determine the question as one depending on the general rules of criminal pleading applicable to the description of similar offences. There can be no doubt that, in every case, to render a party responsible for a felony, a vicious will or wicked intent must concur with a wrongful act. But it does not follow that, because a man cannot commit a felony unless he has an evil or malicious mind or will, it is necessary to aver the guilty intent as a substantive part of the crime in giving a technical description of it in the indictment. On the contrary, as the law presumes that every man intends the natural and necessary consequences of his acts, it is sufficient to aver in apt and technical words that a defendant committed a criminal act, without alleging the specific intent with which it was done. In such case, the act necessarily includes the intent. Thus, in charging the crime of burglary, it is not necessary to aver that the breaking and entering a house was done with an intent to steal. It is sufficient to charge the breaking and entering and an actual theft by the defendant. The reason is, that the fact of stealing is the strongest possible evidence of the intent, and the allegation of the theft is equivalent to an averment of that intent. *Commonwealth* v. *Hope,* 22 Pick. 1, 5. 2 East P. C. *c.* 15, § 24. So in an indictment for murder by blows or stabs with a deadly weapon, it is never necessary to allege that they were inflicted with an intent to kill or murder. The law infers

the intent from proof that the acts were committed, and that death ensued. The averment, therefore, of the criminal act comprehends the evil or wicked intention with which it was committed. The true distinction seems to be this : when by the common law or by the provision of a statute a particular intention is essential to an offence, or a criminal act is attempted but not accomplished, and the evil intent only can be punished, it is necessary to allege the intent with distinctness and precision, and to support the allegation by proof. On the other hand, if the offence does not rest merely in tendency, or in an attempt to do a certain act with a wicked purpose, but consists in doing an unlawful or criminal act, the evil intention will be presumed and need not be alleged, or, if alleged, it is a mere formal averment, which need not be proved. In such case, the intent is nothing more than the result which the law draws from the act, and requires no proof beyond that which the act itself supplies. 1 Stark. Crim. Pl. 165. 1 Chit. Crim. Law, 233. *The King* v. *Philipps*, 6 East, 474. 1 Hale P. C. 455. *Commonwealth* v. *Merrill*, 14 Gray, 415. To illustrate the application of the rule, take the case of an indictment for an assault with an intent to commit a rape. The act not being consummated, the gist of the offence consists in the intent with which the assault was committed. It must therefore be distinctly alleged and proved. But in an indictment for the crime of rape, no such averment is necessary. It is sufficient to allege the assault, and that the defendant had carnal knowledge of a woman by force and against her will. The averment of the act includes the intent, and proof of the commission of the offence draws with it the necessary inference of the criminal intent. The same is true of indictments for assault with intent to kill, and murder. In the former, the intent must be alleged and proved. In the latter, it is only necessary to allege and prove the act. The application of this principle to the case at bar is decisive of the question raised by the present motion. There is nothing in the nature of the crime of murder by poison to distinguish it from homicide by other unlawful means or instruments so as to render it necessary that it should be set out with fuller

averments concerning the intention with which the criminal act was committed. It a person administers to another that which he knows to be a deadly poison, and death ensues therefrom, the averment of these facts in technical form necessarily involves and includes the intent to take life. It is the natural and necessary consequence of the act done, from which the law infers that the party knew and contemplated the result which followed, and that it was committed with the guilty intention to take life.

It was urged by the counsel for the prisoner, as an argument in support of the insufficiency of the indictment, that every fact stated in the indictment might have been done by the defendant, and yet he might have committed no offence; that is, that a person might administer to another that which he knew to be a deadly poison, from which death ensued, innocently and without any intent to do bodily harm. In a certain sense this is true. A physician, for example, might in the exercise of due care and skill give to his patient a medicine of a poisonous nature, in the honest belief that it would cure or mitigate disease, but which from unforeseen and unexpected causes actually causes death. And the same is true of many other cases of homicide produced by other means than poison. Take the case of a murder alleged to have been committed by stabs or cuts with a knife. Such wounds may be inflicted innocently and for a lawful purpose. A surgeon in performing a delicate and difficult operation, by a slight deflection of the knife, which the most cautious skill could not prevent, might inflict a wound which destroys life. But it has never been deemed necessary, because certain acts which cause death may be done without any wicked or criminal intent, to aver in indictments for homicide, that the person charged acted with an intent to take life. The corrupt and wicked purpose with which a homicidal act is done is sufficiently expressed by the averment that it was committed wilfully and with malice aforethought; and this allegation may be always disproved by showing that the act happened *per infortunium*, or was otherwise excusable or justifiable.

*Motion in arrest of judgment overruled.*